UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND REUDY AND KEVIN HICKS, individually and doing business as ADVERTISING DISPLAY SYSTEMS, <br><br> Plaintiffs, <br><br> v. <br><br> CLEAR CHANNEL OUTDOOR, Inc., a Delaware corporation <br><br> Defendant. | No. 02-5438 SC <br><br> ORDER DENYING PLAINTIFFS' MOTION TO REMAND, AND <u>DISMISSING ACTION</u> |

## I. **INTRODUCTION**

Before this Court is a motion to remand, brought by Plaintiffs Raymond Reudy, Kevin Hicks, and Advertising Display Systems (collectively "ADS" or "Plaintiffs"), in their Case Management Statement. Docket No. 294. Also before the Court is a request by Defendant Clear Channel Outdoor, Inc. ("Clear Channel" or "Defendant") to dismiss the suit, which it raised in its Case Management Statement. Docket No. 293. The Court requested additional briefing on the issue of remand, Docket No. 296, and the Defendant thereafter submitted a memorandum in opposition, Docket No. 298. Plaintiffs filed a reply to the Opposition,

Docket No. 304 and Defendant filed a sur-reply, Docket No. 310.[1] Having considered all of the papers submitted by both parties, the Court DENIES Plaintiffs' motion to remand, and DISMISSES the action.

## II. FACTUAL BACKGROUND

Plaintiffs and Defendant are engaged in the business of leasing outdoor advertising signs and billboards in the San Francisco Bay Area. See Report And Recommendation By Special Master ("Report and Recommendation") at 3. Docket No. 278. Both lease sign locations from property owners and rent that space to advertisers. Id. Although Plaintiffs operate only a small number of signs throughout the area, Defendant operates nearly half of the billboards throughout the San Francisco Bay Area. Id. at 6, 53. These signs are regulated under the Planning and Building Codes of the City and County of San Francisco (the "City"). Id. at 3-5.

In January of 2002, Plaintiffs filed a complaint in California state court, alleging that Defendant operates signs and billboards throughout the City in violation of San Francisco Planning and Building Codes. Id. at 5-6. Plaintiffs contend that these signs diminish the value of Plaintiffs' legally maintained signs and constitute an unfair business practice under California

---

[1] After Plaintiffs submitted their reply, Clear Channel moved to submit the sur-reply. The Court GRANTS Clear Channel's motion to submit supplemental material, and has considered the additional briefs submitted by both parties.

1   Business and Professional Code §§ 17200-17210.[2]  Id. at 6.
2   Plaintiffs seek injunctive relief, such that Defendant would be
3   required to stop using or take down its noncomplying signs.  Id.
4   at 12-13.
5       This case was removed on diversity grounds from California
6   state court to this Court on November 15, 2002.  Notice of
7   Removal, Docket No. 1.  On April 11, 2003, this Court granted
8   Defendant's request to stay this action ("First Stay Order").
9   Docket No. 81.  This stay was based upon the doctrine of primary
10  jurisdiction, as the Court would "not risk displacing [] local
11  agencies without first giving them the opportunity to address
12  Plaintiffs' contentions."  Id. at 5.  This stay was partially
13  lifted on June 3, 2004, to allow discovery to commence with regard
14  to twenty-five of the signs at issue.  Docket No. 117.  On
15  November 19, 2004, the case was referred to a Special Master, who
16  later issued findings of fact regarding the twenty-five signs.
17  Docket No. 233.
18      In November of 2006, Defendant submitted alternative motions

---

[2] The Court notes that in the amended complaint submitted on November 25, 2002, Plaintiffs also took issue with a handful of signs in Alameda and San Mateo Counties.  Docket No. 5.  Plaintiffs alleged that these signs were illegal, and that Defendant forced customers to rent these illegal signs before they could rent prime locations in the San Francisco market.  Id. at 11-14.  The Court further notes that Plaintiffs have since attempted to amend their complaint twice, Docket Nos. 176 & 188, and both times, all reference to signs outside of San Francisco was deleted "per the parties' agreement."  Murphy Decl. at 2 n.1.  Docket No. 176, Ex. 2.  Although Plaintiffs' motion for leave to file the Third Amended Complaint was granted in part, Docket Nos. 196, 197, it was apparently never filed.  The Court can find no record or mention of alleged violations outside of the City since the initial complaint.  The Court determines that signs outside of the City are no longer at issue.

to dismiss, for judgement on the pleadings, and for summary judgment. Docket Nos. 263, 266, 267. The Special Master found that the thrust of Clear Channel's argument was that the Court should abstain from considering, and thereby dismiss, Plaintiffs' complaint because of recently enacted legislation by the City, which addressed how the City would enforce its regulations against noncomplying signs. Report and Recommendation at 10. Although the Special Master "acknowledged that Clear Channel had made a plausible argument regarding abstention," he recommended that the Court continue to stay the action, rather than dismiss it, so that "Plaintiffs [could] be afforded the opportunity to periodically check in with the Court or the Special Master to determine if progress is in fact being made toward enforcing the sign regulations . . . ." Id. at 14-16. This Court adopted the Special Master's recommendations, and the case was stayed ("Second Stay Order"). Docket No. 284.

The parties have participated in status conferences on February 22, 2008 and January 9, 2009. Docket Nos. 287, 296. In its most recent status report, Defendant again requested that the case be dismissed under the doctrine of primary jurisdiction. Def.'s Case Management Statement at 9. Plaintiffs requested that the case be permitted to go forward, or alternatively, that the case be remanded to state court. Pls.' Case Management Statement at 7-8, Docket No. 294.

**III. Legal Standard**

There are two relevant doctrines that allow a court to

4

decline to exercise jurisdiction over a case that is properly before it, where the case involves local issues that arise out of a state regulatory regime. The first is the doctrine of Burford abstention, set out by the Supreme Court in Burford v. Sun Oil Co., 319 U.S. 315 (1943), under which a court may remand in favor of an administrative or judicial process at the state level. In the Ninth Circuit, remand under the Burford doctrine requires:

> first that the state has chosen to concentrate suits challenging the actions of the agency involved in a particular court; second, that federal issues could not be separated easily from complex state law issues with respect to which state courts might have special competence; and third, that federal review might disrupt state efforts to establish a coherent policy.

United States v. Morros, 268 F.3d 695, 705 (9th Cir. 2001) (quoting Knudsen Corp. v. Nev. State Dairy Com., 676 F.2d 374 (9th Cir. 1982)).

The second relevant doctrine is the doctrine of primary jurisdiction, "a prudential doctrine under which courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." Syntek Semiconductor Co. v. Microchip Tech., 307 F.3d 775, 780 (9th Cir. 2002). Under California law, a court may stay or dismiss an action when the integrity of an administrative process will be compromised if the matter is not first heard in an administrative forum.[3] See

---

[3] The primary jurisdiction of administrative agencies is a function of state law, and the Court therefore draws its primary jurisdiction analysis from state precedent. See MCI Telecomm. Corp. v. Teleconcepts, Inc., 71 F.3d 1086, 1109-11 (3rd Cir. 1995); Mills v. Davis Oil Co., 11 F.3d 1298, 1303-04 (5th Cir. 1994). This Court applies the California approach, which generally draws heavily on federal precedent, see Farmers Ins. Exch. v. Super. Ct.,

5

Farmers Ins. Exch., 2 Cal. 4th 377, 386-92 (1992). The doctrine is not based upon any "rigid formula" but rather on the Court's judgment of the extent to which local policies are implicated. Id. at 391-92; see also Chabner v. United of Omaha Life Ins. Co., 225 F.3d 1042, 1051 (9th Cir. 2000).

**IV. DISCUSSION**

    A. Plaintiffs' Motion to Remand to State Court

Plaintiffs do not specify any standard or authority under which this Court may remand the action. Plaintiffs do not rest their argument on a procedural defect in the removal of the action to this Court. Reply at 10. Nor do they argue that this Court lacks subject matter jurisdiction. Rather, Plaintiffs base their motion upon the inherent power of the Court to refrain from hearing cases that implicate the independence of state and local government. Id.

To support its contention that the case should be remanded to state court, Plaintiffs cite Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996), which discussed the applicability of the Burford doctrine. Instead of arguing directly for abstention under Burford, Plaintiffs cite Pennzoil Co. v. Texaco, Inc., which states that "[t]he various types of abstention are not rigid pigeonholes into which federal court must try to fit cases. Rather they reflect a complex of considerations designed to soften the tensions inherent in a system that contemplates parallel

---

2 Cal. 4th 377, 386-91 (1992). The Court's discussion of the doctrine also includes references to federal precedent.

1 judicial processes." 481 U.S. 1, 11 n.9 (1987). Plaintiffs urge
2 the Court to resist fitting the case into the "rigid pigeonhole"
3 of Burford, and to remand the case even though it may not meet the
4 typical criteria for remand under this doctrine. Reply at 10.
5 However, the Court finds the three criteria for Burford abstention
6 that the Ninth Circuit outlined in Morros, 268 F.3d at 705, to be
7 controlling.

8 Morros first requires that "the state has chosen to
9 concentrate suits challenging the actions of the agency involved
10 in a particular court . . . ." Id. Where there is no particular
11 state court that reviews the regulatory scheme in question, remand
12 is inappropriate. See City of Tucson v. U.S.W. Communs., 284 F.3d
13 1128, 1133-34 (9th Cir. 2002). Billboard regulations are a
14 patchwork of codes enacted at the local level, rather than a
15 state-wide regime. Although the City has created a process for
16 review and enforcement under its own billboard regulations, see
17 Report & Recommendation at 3-5, remand would submit this dispute
18 to state court, rather than to the City's administrative process.
19 That court would not necessarily be better situated to resolve
20 this dispute than this Court. See Farris v. Advantage Capital
21 Corp. No. 06-1238, 2006 U.S. Dist. LEXIS 81171, at *8 (D. Ariz.
22 Nov. 6, 2006).

23 The second Morros factor examines whether federal issues can
24 be easily separated from complex state law issues in which state
25 courts might have "special competence." 268 F.3d at 705. There
26 are no federal issues involved in this suit. However, any
27 "special competence" relevant to this case is vested in the City's

7

administrators rather than in the state court to which this suit would be remanded. Consequently, the second factor mentioned in Morros does not warrant remand.

The third factor outlined in Morros focuses on whether adjudication by this Court would frustrate a legislative effort to create a coherent regulatory policy. Id. Adjudication by a state court would present just as much risk of frustrating the City's administrative policies, or of creating duplicitous or inconsistent judgments, as would adjudication before this Court. Remand on the basis of the Burford doctrine is inappropriate. The Court DENIES Plaintiffs' motion to remand.

B. Defendant's Request for Dismissal

Plaintiffs allege that Clear Channel's use of approximately 385 signs and billboards around the City violate City regulations. Report & Recommendation at 6. As the Court stated when it first stayed this action in April of 2003:

> Assessing the legality of each and every one of these signs will be an enormous task requiring extensive factual review and detailed knowledge of numerous local sign regulations. . . .  The entities best suited to perform such review are the local governments that draft and enforce the relevant regulations.  The Court, by contrast, is ill-suited for the task of effectively becoming the primary agency in charge of regulating outdoor advertising in the San Francisco Bay Area . . . .

First Stay Order at 4-5.

In April of 2007, the Court again stayed the action on primary jurisdiction grounds, in order to give Plaintiffs an opportunity to "determine if progress is in fact being made toward enforcing the sign regulations." Report and Recommendation at 16.

8

The doctrine of primary jurisdiction is intended to advance "two related policies: It enhances court decisionmaking and efficiency by allowing courts to take advantage of administrative expertise, and it helps assure uniform application of regulatory laws." Farmers Ins. Exch., 2 Cal. 4th at 391. "'Where [an unfair competition law] action would drag a court of equity into an area of complex economic [or similar] policy, equitable abstention is appropriate. In such cases, it is primarily a legislative and not a judicial function to determine the best economic policy.'" Shamsian v. Dept. of Conservation, Cal. App. 4th 621, 641-642 (Ct. App. 2006) (quoting Desert Healthcare Dist. v. PacifiCare, FHP, Inc., 94 Cal. App. 4th 781, 795-96 (Ct. App. 2001)) (alteration in original).

The only relief Plaintiffs are now requesting is injunctive relief. Reply at 10. Plaintiffs' sole request is that this Court police more than a quarter of the City's billboards by issuing and enforcing an injunction that requires Clear Channel to modify or remove nearly 400 signs. This Court, sitting in equity, has discretion to decline the use of its equitable powers, particularly out of respect for the proper functions of local government. See Quackenbush, 517 U.S. at 717 (discussing general discretion of courts sitting in equity to abstain).

During the time that the case has been stayed, the City has made significant progress towards enforcement of its sign regulations, under the purview of the City's General Advertising Sign Program ("GASP"). GASP was created in mid-2006 and staffed

9

in early 2007. Daire Decl., Ex. G ("GASP Report") at 1.[4] Over the course of 2007, it created an inventory of the City's signs, which number over 1500. Id. at 1, 4. GASP then began "processing" the signs and enforcing City regulations. Id. at 1. As of January 10, 2008, GASP had removed 10 signs throughout the City. Def.'s Case Management Statement, Ex. A at 1. By the time it released its last annual report on November 20, 2008, GASP had processed 38% of the City's total sign inventory (580 signs), and of these, it found that 261 signs "do not, and cannot, comply with the Planning Code." Gasp Report at 4. By November 1, 2008, it had already overseen the removal of 141 of these signs. Id. Less than 10 of these signs were removed voluntarily; the rest were removed pursuant to an established enforcement process.[5] Id. at 4 n.2. Although 120 noncomplying signs still required removal at that time, id. at 5, the City's mechanisms are clearly not toothless and are progressing towards a comprehensive regulation of the City's general advertising signs.[6]

This Court therefore finds that the sole relief that Plaintiffs are requesting (i.e., enforcement of the City's sign

---

[4] James A. Daire, counsel for Clear Channel, filed a declaration in support of the Opposition. Docket No. 299.

[5] Procedures for enforcing regulations are outlined in San Francisco, California, Planning Code article 6, § 610 (2008). They involve a Notice of Violation that is sent to the violator, and permits the violator to request reconsideration or to bring the sign up to code. Id. Penalties begin accruing after forty-five days, and the City Attorney or Tax Collector may take action to collect these fines. Id. Alleged violators may also appeal to an administrative law judge ("ALJ"). Id.

[6] GASP also appears to be actively reviewing requests for "in-lieu permits," which sign holders may apply for if they cannot locate a permit for a particular sign but can otherwise show that the sign is likely to be legal. GASP Report at 3. GASP had reviewed 50 of the 290 requests as of November 20, 2008. Id. at 5.

10

regulations) is already being carried out by a City agency that exists for this specific purpose. Declining jurisdiction will therefore have the favorable consequence of avoiding inconsistent or redundant judgments with respect to Clear Channel's signs. It will allow the City Planning Commission to update and amend the directives of GASP in light of local objectives and policies, as it continues to do from time to time. See, e.g., San Francisco, Cal., Planning Commission Resolution No. 17674 (Aug. 8, 2008). It will allow City authorities to exercise their expertise in this area, including by issuing the permits necessary to remove or modify noncomplying signs. See Planning Code art. 6, § 610(c).

ADS argues that the City's process is "painstakingly slow" and that offenders who receive Notices of Violation can cause the City to incur large expenses, by challenging the violations before an ALJ, and thereafter challenging the ALJ's determinations by seeking a writ from California Superior Court. Pls.' Case Management Statement at 1-2. Plaintiffs allege that the City has failed to effectively enforce its ordinances against Clear Channel, and cite specific signs that have allegedly been out of compliance for long periods of time. Id. at 3-6. However, as the Special Master noted, Plaintiffs' dissatisfaction with the City's process "is insufficient to prevent a Court from deferring to the City's expertise." Report & Recommendation at 15; see also C. Sterling Wolfe v. State Farm Fire & Casualty Ins., 46 Cal. App. 4th 554, 568 (Ct. App. 1996) ("It is enough that the Legislature has tried and will try again to address the problem."). Because the City has a comprehensive mechanism for the enforcement of its

sign regulations, dismissal of this action under the doctrine of primary jurisdiction is appropriate.

### V. CONCLUSION

For the reasons stated above, the motion to remand is hereby DENIED. Because this case involves only the implementation of local ordinances, which are already being enforced by a specialized City agency, the action is hereby DISMISSED WITH PREJUDICE.

IT IS SO ORDERED.

April 24, 2009

_____
UNITED STATES DISTRICT JUDGE

12